## SWANN & Others *v.* CLARK & Others.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF ALABAMA.

Argued December 18th, 19th, 1883.—Decided March 3d, 1884.

*Contract—Equity—Hypothecation—Mortgage—Receiver.*

While a railroad was in the hands of a receiver, appointed in a suit for the foreclosure of a mortgage upon it, the court authorized the receiver to borrow money and to issue certificates of indebtedness, to be a lien upon the property prior to the mortgage debt, and to part with them at a rate not less than ninety cents on the dollar. The receiver borrowed money on hypothecation of some of these certificates. The property was decreed to be sold subject to liens established on then pending references. *Held,* That the hypothecated certificates were not liens to the extent of their face, but that a decree directing the debts secured by them to be paid in them at the rate of ninety cents on the dollar to the extent of the money actually advanced, and making that amount of certificates a lien, would be upheld in equity.

*Mr. David Clopton* and *Mr. S. F. Rice* for appellants.

*Mr. Moorfield Storey* and *Mr. P. Hamilton* for appellees.

The facts making the case are stated in the opinion of the court.

Mr. Justice Harlan delivered the opinion of the court.

This case is an outgrowth of a foreclosure suit brought by the trustees in a first mortgage executed by the Alabama & Chattanooga Railroad Company upon its road, property, rights, and franchises, to secure the payment of bonds by it issued. The history of that suit is given in the opinion just rendered in *Swann* v. *Wright's Ex'or.* The terms of the several orders and decrees in the foreclosure suit, so far as they affect the rights of parties now before us, are set forth in that opinion, and need not be here repeated.

Among the claims presented against the trust fund in the foreclosure suit was one by appellee Clark for alleged loans made to the receivers, for which the latter hypothecated to him forty-five receivers' certificates. Commissioner Phillips found that such hypothecation was unauthorized by the orders of the court under and in virtue of which the certificates were issued. But he reported that upon principles of equity those claims, to the extent of moneys actually advanced to the receivers and applied to the benefit of the trust estate, should be allowed and paid in certificates, at ninety cents on the dollar. The amount advanced by Clark was ascertained to be $16,760.89; and for that sum, with interest to September 1st, 1875, amounting in all to $19,658.01, the commissioner reported that he should be allowed, in certificates, the sum of $21,842.23. These conclusions were sustained by the court; but, as it appeared that the Clark certificates were, or were supposed to be, in the hands of different parties, and inasmuch as the rights of those parties could not be determined from the reports of the commissioner, those certificates were not allowed, and the parties were required to litigate their respective rights with each other, by bills filed in the same court, thereby "to ascertain and settle the amount that the said trust fund is liable for, and who are entitled to any and which of said certificates."

It was in consequence of this direction that the present suit was brought by appellees, who unitedly held thirty-seven

of the forty-five certificates (as to two of which no further claim on the trust fund was asserted by Clark), the remaining six being held by some person to appellees then unknown. The object of the suit was to obtain a decree adjudging that receivers' certificates to the amount of the moneys advanced by Clark, with interest thereon, be allowed to the petitioners and to the holder of the six certificates—the certificates so allowed to be established as a prior lien upon the railroad and other property purchased by Swann. The latter appeared and answered ; and, admitting that Clark had loaned the receivers $16,760.89, he denied that he or any persons claiming under him were entitled to be paid in said certificates, or any of them, or that the claim asserted was a lien on the property to the prejudice of the rights of himself or of the Alabama Great Southern Railroad Company. A decree was rendered wherein it was found that the amount, principal and interest, of the loan by Clark was, on September 1st, 1875, $21,842.23. It was adjudged that the appellees, as the holders of thirty-seven of the certificates, were entitled to thirty-seven forty-thirds of the total amount due, or the sum of $18,794.47. At the instance of Swann, the court required appellees to hold three certificates, subject to the further order of the court, for the protection of the unknown holder of the six certificates, who, it was suggested, might show himself entitled to be paid in full ; and petitioners were given leave to move at the next term for the allowance of the suspended certificates. All the other certificates, as well as the notes given by the receivers for the moneys so loaned to them, were surrendered and destroyed. The certificates so allowed were established by the decree as liens on the mortgaged property.

A rehearing was asked by Swann at the succeeding term, but the application therefor was denied. At that term appellees asked to have the suspension placed upon the before-mentioned three certificates removed. Thereupon E. J. Fallon presented his petition in the cause, showing that the before-mentioned six certificates had come into the possession of the Alabama Great Southern Railroad Company through a settlement had between it and J. C. Stanton, by the terms of which

the latter agreed to deliver to that company a large number of receivers' certificates of admitted and ascertained validity; that the company did not concede the six certificates to be valid, but received them from said Stanton to be held as security only for his delivery of a like number of admitted and ascertained validity; which being done, they were to be returned to him. For that purpose, and in that manner, Fallon averred in his petition, the said six certificates were held by him as agent of the company. He claimed that they had been originally transferred to D. N. Stanton, from whom J. C. Stanton acquired them, and that if any of the forty-five certificates were allowed, the six above named were entitled to be paid in full before appellees received anything. He asked that he and J. C. Stanton be made parties defendant, to the end that none of the rights of said Stanton should be prejudiced by any neglect upon the part of the company. He was made a defendant, and his petition directed to be taken as his answer.

Upon final hearing the three suspended certificates, with coupons maturing after September 1st, 1875, were allowed to the appellees, while three certificates in full and a fourth one for $47.75 were allowed to Fallon—the excess in certificates and coupons held by Fallon to be surrendered.

From this decree Swann, Fallon, and the Alabama Great Southern Railroad Company appealed.

The main question to be determined is that which arises between Swann and the appellees touching the alleged lien upon the property sold in the foreclosure suit, for the certificates allowed to the appellees. If the lien established in favor of appellees for the amount of those certificates belongs to the class subject to which the property was sold, purchased, and conveyed, then, for the reasons stated in *Swann* v. *Wright's Ex'r*, Swann is not at liberty to raise any objection to the allowance of such certificates to the extent of the moneys originally advanced by Clark to the receivers. The decree of August 26th, 1872, under and in virtue of which the receivers' certificates were issued, reserved a prior lien to secure the payment of all moneys raised through the receivers by loan, or which might be advanced to them for the purposes expressed in the orders

of the court.   While the receivers were adjudged not to have authority to hypothecate certificates, as was done in Clark's case, yet, as early in the litigation as January 23d, 1874, the date of the first decree of sale, the court—having before it the report of Commissioner Burke, and being thereby informed of Clark's claim, as well for moneys advanced to the receivers as of a lien therefor—declared in that decree that nothing therein should impair the rights of "holders of certificates under hypothecation to the extent of money loaned and advanced on the same" for the purposes contemplated by its orders, "with interest and expense added thereto."   And the decree of February 14th, 1876, based upon the report of Commissioner Phillips, shows upon its face that the court recognized the soundness of the rule suggested by him, which required the payment, in certificates, of all claims for moneys in good faith advanced to the receivers, and applied to the benefit of the trust estate.   By that decree it was ordered that the holders of the forty-five certificates interplead in the same court, so that the court would be informed as to the amount for which the trust fund was liable.   This was not a disallowance of these claims as liens, but only a suspension of them until the suit thus directed to be brought was ended.   They were pending and undetermined when the decree of December 4th, 1876, was made.   That decree, we have seen, required the sale to be made "subject to all liens established, or which shall be established, by said court in this cause, on references heretofore had and now pending, as prior and superior to the lien of the holders of bonds issued under the first mortgage."   The claims in question had theretofore been the subject of reference to commissioners; and, within any just interpretation of the words of the decree, they were the subject of pending references, unless it be that the court, by requiring the parties to litigate them in a new suit between themselves, instead of requiring them to disclose their interests before a commissioner, intended to make a distinction between liens established by means of a formal reference to the commissioner, and those established in an independent suit brought in conformity with its orders.   But that supposition is inadmissible, especially in view of the fact, apparent upon

the face of the decree of February 14th, 1876, that numerous claims, similar in their origin to Clark's, and secured by hypothecated certificates, were then, before the final decree of sale, allowed, payable in certificates at 90 cents on the dollar. It is manifest from the decree that the court would then have allowed the Clark claims, to the extent of money actually loaned to the receivers, and applied for the benefit of the trust, and paid them in certificates, had it been possible at that time to determine the actual ownership of the forty-five certificates. And this view is strengthened by the further fact that, in the decree of June 19th, 1877, confirming the sale to Swann, subject to the liens described in the decree of December 4th, 1876, the court expressly freed the trust estate from liability to certain persons on account of hypothecated certificates held by them, but does not name the forty-five certificates as among the number so cut off.

It seems to us entirely clear that, by the decree of sale, the liens which were attached to such certificates as the court might award, on account of the moneys loaned to the receivers by Clark, were among those expressly subject to which Swann purchased, and received title to, the property. Consequently, for the reasons stated in *Swann* v. *Wright's Ex'r*, the property is liable to the holders of such certificates.

This disposes of all that there is of substance in the case. We perceive nothing of merit in the appeals of Fallon and the Alabama Great Southern Railroad Company. Upon the issue as to whether the property was liable for the amount of the certificates awarded to appellees, the only necessary party defendant was Swann, the purchaser. The railroad company was a purchaser *pendente lite*, and was not entitled to be made a party to issues pending and undetermined when it purchased. That company was, upon the showing made by its agent, the holder of the before-mentioned six certificates which were made payable to bearer. It placed the certificates in his hands for the purpose of having him present them in court for allowance in full. He did appear and was made a party. Waiving any inquiry as to whether the amount involved in the appeal, so far as it concerns Fallon or those whom he represents, is

large enough for our jurisdiction, it is sufficient to say that no facts were disclosed which entitled the six certificates to be paid in full. We perceive no error in the decree as to him or the company, and it is

*Affirmed.*