CASE 86—RAILROADS, CONNECTING RAILROADS—FEBRUARY 19, 1885.

# Shelbyville R. R. Co. v. Louisville, Cincinnati and Lexington R. R. Co.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. The common law obligations of a railroad company to a connecting line are the same as to reception, transportation and delivery of freight as those existing between a railroad company and an individual shipper.
2. Whatever rights beyond those belonging to a natural person, claimed by one company against another, must be found either in the charters of the companies or arise from contract.
3. The claim made by appellant to the use of appellee's track with its engines and cars is, if granted, destructive of appellee's franchise.
4. Appellant has no more right to require appellee to stop its cars at the

Shelbyville R. R. Co. v. Louisville, Cincinnati and Lexington R. R. Co.

junction of the two roads than an individual would have to require appellee to stop at the point nearest his residence.

5. Nor can appellant run its cars over appellee's road without its consent.

CALDWELL & HARWOOD for appellant.

1. That a physical connection between the roads of appellant and appellee is manifest by the language of the appellant's charter. That no injury is to be done to the works of appellee.

2. The court should bear in mind that the right to connect other roads with appellee is reserved to the citizens of this State.

3. We insist that appellee must permit the business of appellant's line of road to be transported over its road in the usual mode of conducting such business.

4. Appellee claims a written contract, filed by appellee, which evidences the fact that there was no contract between the companies allowing appellant to run to Anchorage; but a careful examination of the contract proves the reverse. (Acts 1850, 1851; Charter Shelby R. R. Co., section 15; Acts 1847, page 41; Charter L. & F. R. R. Co., sections 49 and 54; 46 Maine, 77; Kerr on Injunctions, 501; Bouv. Inst., 6 Bush, 202; 7 Dana, 276; 2 Story's Eq., section 761; High on Injunctions, sections 2, 528; 49 Ill., 33; 12 Bush, 63.)

No brief for appellee.

CHIEF JUSTICE HINES DELIVERED THE OPINION OF THE COURT.

This is an action by appellant, the Shelbyville Railroad Company, against the Louisville, Cincinnati and Lexington Railroad Company, by which it is sought to enjoin the latter company from doing certain things that are claimed to be detrimental to the former. The court below dissolved the temporary injunction which had been granted and the question is on the correctness of that ruling.

The complaint is :

*First.* Of the refusal of appellee to permit appellant the use for a half mile, by its engines and cars, of the road-bed and turn-tables of appellee.

*Second.* The refusal of appellee to make with appellant through rates, and execute through bills of lading for freight and through rates for passengers, and to haul its cars over appellee's road to their destination.

*Third.* The refusal of appellee to stop all its trains at the junction of the two roads, a half mile from appellee's depot.

These rights are claimed by appellant upon these grounds :

*First.* By virtue of the provisions of the charters of the companies.

*Second.* By usage and customs between connecting lines ; and

*Third.* Under contract entered into between the two companies.

Appellee's road, at the time this controversy arose, was operated under a charter granted to the Louisville and Frankfort Railroad Company in 1847. The provisions of that charter bearing upon the questions to be considered are as follows :

"It shall not be lawful for any other company, or any person or persons whatsoever, to travel upon or use any of the roads of said company, or to transport persons or merchandise or produce of any description whatsoever along said roads or any of them, without the license or permission of the president and directors of said company." (Section 44.)

"That full right and privilege is hereby reserved to the citizens of this State or any company hereafter to be incorporated under the authority of this State, to connect with the road hereby provided for any other railroad leading from the main route and diverging therefrom at an angle of twenty degrees or more, to any part or parts of the State : *Provided,* That in forming such connection no injury be done to the works of the company hereby incorporated." (Section 49.)

" It shall be lawful for new companies hereafter to be incorporated to unite with this road, and the said company hereby incorporated shall not charge for freight and passengers brought on from other railroads, as above permitted, any more than the regular rate charged on this road, from end to end, *pro rata*." (Section 54.)

In 1851 appellant, the Shelbyville Railroad, was chartered, with permission to "intersect" with the Louisville and Frankfort Railroad at such point as might be agreed upon by the president and directors of the Shelbyville Railroad Company. (Section 15, Acts 1851, chapter 431.)

The Shelbyville road was constructed, nineteen miles in length, and connected with the Louisville and Frankfort road at a point a half mile from the depot of the latter road at Anchorage, at which place the Louisville and Frankfort road then had, and now has, ample depot facilities for freight and passengers, together with switches and turn-tables. The Shelbyville road erected no depot building at the junction with the Louisville and Frankfort road, had no switches or turn-tables. The only accommodation for the transfer of passengers and freight being an uninclosed platform in the angle of intersection. After this connection the Shelbyville road was permitted, without agreement, for a time to use with its engines and cars the track of the Louisville and Frankfort road from the junction to Anchorage. Subsequently an agreement was made between the roads for hauling cars of each over the road of the other, and for through passenger and freight rates. This agreement had ceased before the beginning of this

controversy, and the track of the Louisville, Cincinnati and Lexington road was being used by permission only.

The common law obligations of a railroad company to a connecting line are the same, as to reception, transportation and delivery of freight, as those existing between the railroad company and an individual shipper. Whatever rights or privileges, other than those belonging to a natural person, that are claimed by one railroad company against a connecting company, must be found either in the charters of the companies or arise from contract. The Legislature may unquestionably, when not forbidden. by the organic law, regulate the business relations between connecting lines of railroads. In this instance we think the Legislature has not attempted to regulate the business connections between the lines of the opposing companies. The language of the charters quoted not only fails to provide for more than a physical connection between the roads, but negatives the idea that there shall be any business connection except by consent or agreement. The forty-fourth section of the act of 1847 provides that it shall not be lawful for any person or corporation to use the company's road for the transportation of merchandise or otherwise without the consent of the company.

The claim made by appellant to the use of the track of appellee with its engines and cars is, if granted, destructive of appellee's franchise.

Appellee does a through business, connecting north, south, east and west, has eighteen freight and passenger trains passing the point of junction of the two roads within twenty-four hours, in addition to wild or

extra trains that may be necessary for the transaction of the business of the principal road. From delays by accident or other emergencies, it is essential to the preservation of the lives of passengers, the property of shippers and of the company, that all trains moving over the road shall be subject in their movements to the direction of the train dispatcher.

Under such circumstances an independent line coming at will with its engines and cars upon the road of another company would necessarily so interfere with the business of the line whose road was thus used as to practically destroy it. To allow it would be to allow, without even the pretense of legislative sanction, the one company to take the property of another and appropriate it to its own use. In the absence of legislative or constitutional prohibition, a railroad corporation has the same right, subject to common law restrictions, as a natural person to the use of its property, whether road-bed, franchise, depots, rolling stock or appurtenances necessary or proper to the running of the road under its charter. If the Legislature fails to make a contract between connecting lines as to the transaction of the business over and between them, a court of equity can not make a contract for them upon the assumption that it would benefit the public or the roads themselves.

The Louisville and Frankfort (now L. C. & L.) had the charter right to fix its depots at such points on the road as it might deem advisable. Prior to the building of the Shelbyville road the Louisville and Frankfort Railroad Company had established a depot at Anchorage, erected a depot building, put in switches and fur-

nished all the facilities for passenger and freight traffic, and made that one of its regular stopping places. Subsequently the Shelbyville Company, by its president and directors, without agreement or understanding with the Louisville and Frankfort road, made their junction a half mile from Anchorage. As to the Louisville and Frankfort Company, there was no charter or common law obligation to stop at any other than the stations established by that company. Appellant had no more right to require appellee to stop its cars at the junction of the two roads than a farmer would have to require its trains to be stopped at the point nearest his house and most convenient to him, when there was no established depot at that place. This is a statement of the simple right of it, but the justice of it is stronger still. Appellant had, of its own will, chosen a point of connection a half mile from the depot of appellee, which was a regular stopping place with all depot facilities, and appellant did not erect any building at the junction, or in any way provide for the transfer of freight and passengers, except by the erection of an open platform.

The estimated cost to appellee in stopping its trains at this junction, in addition to stopping at Anchorage where it was compelled to stop, is $25 per day. If appellant should have fixed its junction with appellant's road within fifty feet of the Anchorage depot, as it might have done, it would have had the same right to have required appellee to stop its trains at that junction, after having stopped fifty feet beyond at the regular depot. (Atchison, Topeka and Santa Fe R. R. Co. v. Denver and New Orleans R. R. Co., 110 U. S., 607.)

It is further insisted for appellant that on the faith of a resolution passed by the board of directors of the Louisville and Frankfort road in 1852, and before the construction of appellant's road, appellant was induced to raise large sums of money to construct its road and did construct it on the faith that the Lexington and Frankfort Company would grant the privileges here claimed. That resolution is as follows :

"*Resolved*, That the president and directors of the Louisville and Frankfort Railroad Company will do all in their power, under their charter, to facilitate the trans-- portation of freight, with as little delay as possible,. over the Louisville and Frankfort Railroad between Louisville and Shelbyville, whenever the said Shelby-ville Railroad shall have constructed their road from Shelbyville to a junction with the Louisville and Frank. fort road at or near Hobbs ; and further, said president. and directors of the Louisville and Frankfort Railroad Company have no doubt that such arrangements here-after can be made between the two companies as to enable the people of Shelbyville to arrive in Louisville in the morning and return in the evening, and such other arrangements as will be mutually to the interest. of both roads ; and the Louisville and Frankfort Company will make a fair contract for the connection of the two roads, should the Shelbyville Company apply for such a connection."

I am unable to see in this any semblance of contract. At most it is simply a proposition, never accepted, never acted upon, so far as the record in this case shows. The proposition was to facilitate the transportation of freight with as little delay as possible. The

complaint here is not that there was any delay in the transportation of freight, and as to passengers and freight the resolution expressly reserves that for future agreement.

That this resolution was never acted upon by appellant and never considered binding as a contract is manifest from the agreement subsequently entered into by which the two companies regulated the terms upon which each road should carry the freight and cars of the other, which agreement afterwards expired.

The most that could be claimed on the face of the resolution is that freight should not be unnecessarily delayed. That was a common law right, existing independent of any agreement, and of which no complaint is made.

Judgment affirmed.

Judge LEWIS dissenting.