## UNITED STATES v. HUGHITT.

*(District Court, N. D. New York.* February 3, 1891.)

BANKS—MAKING FALSE REPORTS—INDICTMENT.

An indictment under Rev. St. U. S. § 5209, which provides that every president of any association who makes any false entries in any book, report, or statement of the association, with intent to injure or defraud, shall be deemed guilty of a misdemeanor, alleged that defendant, as president of a certain bank, "did knowingly, wrongfully, and unlawfully make, and cause to be made, false entries in a report or statement" of such bank, being a report of its condition at a designated time, "made to the comptroller of the currency, as required by law to be made." The report was set out in full, and the particulars in which the entries were alleged to be false were stated in detail. *Held,* that the indictment was sufficient. though it did not allege that the report was made pursuant to a request of the comptroller, or according to a form or at a time prescribed by him under Rev. St. § 5211, which provides therefor.

On Demurrer and Motion to Quash.

In 1887 the defendant was president of the First National Bank of Auburn, N. Y. At the September term of this court he was indicted for making false entries in a report purporting to give a statement of the condition of said bank, at the close of business on the 7th day of December, 1887. The indictment is framed under section 5209 of the Revised Statutes, which provides that—

"Every president * * * of any association who * * * makes any false entry in any book, report, or statement of the association, with intent, in either case, to injure or defraud the association or any other company, body politic or corporate, or any individual person, or to deceive any officer of the association, or any agent appointed to examine the affairs of any such association; and every person who with like intent aids or abets any officer, clerk, or agent in any violation of this section, shall be deemed guilty of a misdemeanor," etc.

The first count alleges that the defendant as president of said bank—
"Did knowingly, wrongfully and unlawfully make and cause to be made false entries in a report or statement of the said First National Bank of Auburn, being a report of the condition of the First National Bank of Auburn at the close of business on the 7th day of December, 1887, made to the comptroller of the currency as required by law to be made to the comptroller of the currency."

The report is then set out *in extenso,* and the indictment proceeds—
"And which said report or statement so made as aforesaid, then and there purported to show as required by law then and there, and did, in substance and effect, purport to indicate and declare the true and correct condition and standing of the said the First National Bank of Auburn, at the close of business on the said seventh day of December, A. D. 1887, and which said report, in which said false entries were then and there made as aforesaid, was a certain report of the said the First National Bank of Auburn, in that behalf required by law to be made to the comptroller of the currency, and which report or statement made as aforesaid was false and untrue in the following respects and contained false entries as follows, to-wit:"

The indictment then sets out the items *in hæc verba* and states in detail the particulars in which they are said to be false, the count in ques-

tion concluding with a full allegation of knowledge on the part of the defendant and of intent on his part to deceive. The indictment contains 18 counts. Those numbered 1st, 3d, 5th, etc., charge the defendant with making false entries in said report. Those numbered 2d, 4th, 6th, etc., charge him with aiding and abetting Charles O'Brien, the cashier of the bank, in making false entries in said report. The language quoted from the first count is repeated, in substance, in the other counts and in these respects all the counts are substantially similar. The reports which national banking associations are required by law to make are provided for by section 5211 of the Revised Statutes as amended by the act of February 26, 1881, as follows:

"Every association shall make to the comptroller of the currency not less than five reports during each year, according to the form prescribed by him, verified by the oath or affirmation of the president or cashier of such association, and attested with the signatures of at least three of the directors. Each such report shall exhibit in detail, and under appropriate heads, the resources and liabilities of the association at the close of business on any past day by him specified; and shall be transmitted to the comptroller within five days after the receipt of a request or requisition therefor from him, and in the same form in which it is made to the comptroller shall be published in a newspaper published in the place where such association is established," etc.

The indictment does not contain an allegation that the report in dispute was made pursuant to a request of the comptroller or according to a form prescribed by him, or that the 7th of December, 1887, was specified by him as a day in reference to which such report should exhibit the resources and liabilities of the bank. The demurrer is aimed at these omissions. It is argued that reports to the comptroller are provided for by section 5211 and nowhere else. Unless, therefore, a report is made pursuant to the requirements of that section it has no standing or vitality. As it is necessary to prove that the preliminary steps required by the statute have been taken, it is also necessary to allege that they have been taken, and the failure to do this is, it is insisted, fatal to the indictment. With the demurrer is united a motion to quash.

*John E. Smith*, Asst. Dist. Atty., for the United States.

*W. F. Cogswell*, for the defendant.

Coxe, J., (*after stating the facts as above.*) The indictment is framed under section 5209. The crime charged is a misdemeanor, expressly made so by statute. In such cases it is usually sufficient if the pleader states the offense in the language of the statute, provided the defendant is apprised with reasonable certainty of the charge made against him.

In *U. S.* v. *Simmons*, 96 U. S. 360, the court upheld an allegation that the defendant's still, boiler, etc., were used "for the purpose of distilling, within the intent and meaning of the internal revenue laws of the United States." It was held that the language quoted sufficiently advised the defendant of the nature of the accusation made against him. The court said:

"Where the offense is purely statutory, having no relation to the common law, it is, 'as a general rule, sufficient in the indictment to charge the defend-

ant with acts coming fully within the statutory description, in the substantial words of the statute, without any further expansion of the matter.' "

In *U. S.* v. *Mills,* 7 Pet. 138, the question certified to the supreme court was whether an indictment for advising a mail carrier to rob the mail ought to aver that the said carrier did in fact commit the offense of robbing the mail. The court said:

"The answer to this, as an abstract proposition, must be in the affirmative. But if the question intended to be put is, whether there must be a distinct, substantive, and independent averment of that fact, we should say it is not necessary."

In *U. S.* v. *Bachelder,* 2 Gall. 15, the indictment was framed under a statute making it an offense forcibly "to resist, prevent or impede, any officers of the customs," etc., "in the execution of their duty." The indictment charged that the defendant—

"Impeded Nehemiah Jones in the execution of his office, as an officer of the customs for the port and district of Portsmouth, * * * to-wit, an inspector of the port and district of Portsmouth duly appointed and authorized to seize goods imported into said district."

The indictment was upheld by Judge STORY.

In *State* v. *Temple,* 12 Me. 214, where the indictment was for burning a meeting-house, under the provisions of a state statute, it was held to be unnecessary to allege the ownership or value of the house, or that it was at the time in question used as a place for public worship.

In *Edge* v. *Com.,* 7 Pa. St. 275, it was decided that an indictment against a public officer for misfeasance in office was sufficient if it alleged "that he was duly elected by the qualified voters of the township," etc.

In *U. S.* v. *Britton,* 107 U. S. 655, 2 Sup. Ct. Rep. 512, the supreme court laid down the following as the necessary requisites for the proper averment of the crime of making false entries under section 5209:

"(1) That the accused was the president or other officer of a national banking association, which was carrying on a banking business. (2) That being such president or other officer, he made in the book, report, or statement of the association, describing it, a false entry, describing it. (3) That such false entry was made with intent to injure or defraud the association, or to deceive any agent, describing him, appointed to examine the affairs of the association. (4) Averments of time and place."

It is true that in the *Britton Case* the false entries were alleged to be made in a book and not in a report of the bank, but the tenor of the decision is to the effect that the technical precision pointed out by this demurrer is not required in indictments under this section.

The foregoing, and many other decisions that might be cited, establish the proposition that in misdemeanors created by statute it is, as a rule, sufficient to charge the offense in the language of the law; that the principal object of the indictment is to inform the accused of the precise nature of the charge brought against him, and, where this is done, the extremely technical rules of pleading applicable to common-law felonies may be dispensed with.

Applying these principles to the case in hand there can be little question that the indictment is sufficient. The defendant can have no doubt

as to the nature of the charge against him. The report which is said to contain the false entries is set out in full. The date when the report was made and the date as to which the condition of the bank is given, are both stated with perfect accuracy. The defendant is informed not only that the report was in fact made to the comptroller of the currency, but that it was a report which the law required the association to make to the comptroller. His attention is thus called directly to section 5211.

How can there be any mistake or misapprehension as to the offense charged? It is incredible that the defendant can be misled. Some things may be presumed even in criminal pleading. Where a report is described with the care shown in this indictment, it is thought that the requirements of another section of the law containing minute conditions as to the time of making and sending and as to the contents of the report need not be specifically pleaded. Their performance will be presumed. If another section of the act prescribed the number and names of the books which an association is required to keep, their contents and the manner of keeping them, it can hardly be doubted that an indictment charging the making of a false entry in the ledger of the association would be sufficient. If the ledger was not in the required form, and this fact constituted a defense, it would be for the defendant to show it. But, irrespective of these considerations, it is thought that there is strong reason for the position that it is unnecessary to prove that the requirements of section 5211, as pointed out by the demurrer, have been complied with, and, therefore, that it is unnecessary to allege them. The language of section 5209 is very broad. It punishes the making of "any false entry in any book, report or statement of the association." The statute makes no provision for the keeping of books or the making of statements eo nomine. And yet it was clearly the intention of the law-makers to punish the making of false entries not only in books but in statements of the condition of the bank, if such entries were made with intent to deceive. Section 5211 provides for five reports annually, but if the association sees fit to volunteer other reports containing false entries made with the express purpose of deceiving the officers of the law as to the true condition of the bank, can it be doubted that such reports would be within the provisions of section 5209? A construction that they would not be defeats the obvious intent and purpose of the law. By sending a false report to the comptroller or an examiner, at a critical period, suspicion might be allayed and an unfounded confidence created, under cover of which the bank could be plundered and the grossest frauds perpetrated with impunity. It cannot be doubted that a report, whether called for by the comptroller or not, which is a report, in the usual form, of the condition of the association, made by its president in his official capacity and transmitted to the comptroller, is within the section in question provided it contains false entries made with intent to deceive. A bank officer who has made such a report cannot escape punishment by showing that the fraud was voluntarily committed, and at a time when he was under no obligation to furnish any report or statement whatever. The statute does not confine the crime of making false

entries to "a report made to the comptroller under the provisions of section 5211 and pursuant to his request;" it covers "any report or statement."

The construction contended for by the defendant is too narrow; it does not fairly express the legislative intent.

The demurrer is overruled.