AMIDON, District
Judge. The defendant has demurred to an indictment drawn under section 5209 of the Bevised Statutes, charging him, as president of the Grand Porks National Bank, of Grand Porks, N. D., with making false entries in reports of the condition of that bank to the comptroller of the currency. There are nine counts in the indictment, which are substantially the same in form, varying mainly as to the party whom it is charged the defendant intended to defraud or deceive by the false entry. After alleging the incorporation of the bank under the national bank act, and that it had been engaged in business fór a period of more than one year preceding the 25th day of July, 1894, the indictment alleges: That the Grand Porks National Bank on that day made to the comptroller of the currency a report of the condition of the association at the close of business on the 18th day of July, 1894, according to a form theretofore prescribed by the comptroller. That the report was one which it was the duty of the association by law to make to the comptroller, being one of the five reports required by law to be made in each year by every such association. That the report was verified by the oath of the defendant, Booker, president of said association, and attested by the signatures of three of the directors. That said Booker, so being president of the association, unlawfully, knowingly, and willfully did make certain false entries in the report; that is to say, a false entry to the effect that at the close of business on the 18th day of July, 1894, the amount due the said association from approved reserve agents was $60,042.01, in the words and in figures following, that is to say:
Dollars. Ots.
12. Due from approved reserve agents, subject to check (see schedule) ...................................................... 60,042 01
That said entry was false, in this: that said association did not at said time have due from approved reserve agents the sum of $60,042.01, or any part thereof, except the sum of $25,042.01, as the said Booker then and there well knew. That said Booker at the time of making said false entry thereby intended to defraud and injure said Grand Porks National Bank, and divers other persons, whose names are to the grand jurors unknown. The demurrer to each of the counts is in the following language:
“Defendant demurs to the first count of said indictment for the reason that the report in which the false entry is charged to have been made is not set forth in full; because there is no proper description of said report; and for the reason that such indictment contains no allegations from which it can be determined whether the report in which said false entry is charged to have been made is in the form prescribed by the comptroller of the currency of the United States, or as to what class of reports required by the statutes of the United States it belongs, or as to whether the report charged to have been made is such a report as is required by the statutes of the United States.’’
It was also urged upon the argument of the demurrer that, inasmuch as the false entry refers to a schedule, the schedule itself should have been set out in the indictment. All the questions thus raised will be solved by a correct answer to the following question: Is it *378 an ingredient of the« offense of making a false entry in a report of a national bank, under section 5209 of the Revised Statutes, that the report should be one which it was the legal duty of the association to make? If it is essential that the report should be of that character, then a false entry in any other report would not constitute the offense; and it would therefore be necessary that the indictment should, by apt averments, show that the report in which the false entry is charged to have been made possessed all the elements specified in the statute. Among other things, in addition to the specifications contained in the indictment in this case, it should be averred that the report had been called for by the comptroller, and that he had specified the day in respect to which the report was made as the one for which the report should exhibit in detail the resources and liabilities of the association. But, on the contrary, if it is only necessary that the report should be one that was made in the due course of the business of the association, then all that would be required of the indictment would be to identify the report with a degree of precision and certainty sufficient to apprise the defendant of the particular offense with which he is charged. The distinction which it is essential to observe is that which exists between pleading all the ingredients of a crime, and identifying the particular act for which the defendant is called upon to answer. On the face of section 5209 there is nothing which would naturally limit the offense to reports which the association was legally bound to make. The language of the statute is as follows:
“Every president, director, cashier, teller, clerk, or agent of any association * * "* who makes any false entry in any report or statement of the association with intent, in either case, to injure or defraud the association or any other company, body politic or corporate, or any individual person, or to deceive any officer of the association or any agent appointed to examine the affairs of the association, * * * shall be deemed guilty of a misdemeanor,” etc.
This language is as broad as it could well be made,—“any report or statement of the association.” It is to be noticed, also, that the fraudulent intent to injure or deceive is not confined either to the association or to the officers to whom the report is required to be made, but extends to “any company, body politic or corporate, or any individual person.” It is evidently the intent of the statute to shield each of these classes against the wrongful act mentioned. The only legislative provisions requiring national banks to make reports are contained in sections 5211 and 5212 of the Revised Statutes, and I am unable to discover anything in section 5209 which would restrict its provisions to the reports mentioned in those sections. Suppose the board of directors of a national bank should call upon the cashier and president, as its executive officers, to present to them a report of its condition, and in such report these officers should make false entries with intent to deceive the board of directors; would not their act come within the language of the statute, and also within the mischief which it was intended to provide against? It often happens that the stockholders of such a corporation become alarmed and dissatisfied as to its condition. Suppose that they should call upon the president and cashier to make a report to be submitted to a meeting of the stockholders, and in this report these officers should make false entries for the purpose of deceiving or defrauding the stockholders. *379 There is nothing in the statute which makes it the legal duty of the association to make any such report, or of the president or cashier to do so. The duty to make the report would arise solely out of the agency of the officers. And yet it is difficult to see why such a false entry does not come within the letter and the mischief of the statute as fully as a similar entry in a report to the comptroller of the currency. It should also be noticed that the statute is not confined to “reports” alone, but also embraces “statements.” The only term used in sections 5211 and 5212 is “report,” and to confine section 5209 to those reports would certainly have the effect of rendering the term “statement,” in that section, nugatory. The authorities on this subject are not entirely harmonious. In the case of U. S. v. Potter, 56 Fed. 83, 97, after a very careful consideration, the conclusion is reached that section 5209 is confined to such reports as the association is bound by law to make. The court says:
“In the absence, therefore, of any authority cited to the contrary, I hold that no report is within the purview of this penal statute unless it is shown to be in conformity with the law in everything except in the matter of the false entry.”
In that case a demurrer to an indictment was sustained for the reason that the verification and attesting of the report were not pleaded with sufficient fullness. The only authority cited in support of the ruling was the case of 17. S. v. Eqe, 49 Fed. 852. It would seem, however, that the latter case could properly be explained on other grounds. In that case a bank examiner requested the defendant, who was a clerk in a national bank, to make the statement or report in question, “on the ground of the illness of the examiner’s assistant,” and it appears from the evidence “that it was the custom of the examiner to make such a statement personally, and that it was no part of the duty of the bookkeeper to do it.” It is manifest, therefore, that in doing this work the clerk was not the agent of the bank, but of the examiner; and the judge bases his instruction upon that ground, stating that the defendant could not be held responsible “for the services he rendered the examiner. His act in complying with the examiner’s request was voluntary. As an officer of the bank he was not required to perform it.” That is, as I understand, it was not within the scope of his agency. In the case of Cochran v. U. S., 157 U. S. 286, 15 Sup. Ct. 628, it is expressly held that it is not necessary to allege in the indictment that the report in which the false entry was made w«;3 verified by the oath of the president or cashier, or attested by the signatures of the directors. The same rule is also adopted in the case of U. S. v. Hughitt, 45 Fed. 47. I am therefore led to the conclusion that it is not necessary that the report should be one which the association was bound by law to make, but that it is sufficient if the report was made in the due course of the business of the association. From this conclusion it follows that it is not necessary that the indictment should set forth facts from which the court can see that the report was one of the reports mentioned in section 5211 or 5212. It is only necessary to show that the report is one which was made in the due course of the business of the association, and to identify it with sufficient clearness and certainty to satisfy the rules of criminal pleading in that respect. The averments of the indict *380 ment in this case are ample for both of these purposes. The other objections raised to the indictment are severally held to be untenable in the case of U. S. v. French, 57 Fed. 382. The demurrer is therefore. overruled.