## HARPER v. UNITED STATES.

### (Circuit Court of Appeals, Eighth Circuit. April 30, 1909.)

### No. 2,741.

1. INDICTMENT AND INFORMATION (§ 71*)—SUFFICIENCY OF ACCUSATION—CERTAINTY AND PARTICULARITY.

In determining the sufficiency of an indictment, the question is not whether it might have been made more certain, but whether it contains every element of the offense intended to be charged, and sufficiently apprised the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 193; Dec. Dig. § 71.*]

2. BANKS AND BANKING (§ 257*)—NATIONAL BANKS—FALSE ENTRY BY OFFICER—SUFFICIENCY OF INDICTMENT.

An indictment under Rev. St. § 5209 (U. S. Comp. St. 1901, p. 3497), which charges the defendant as cashier of a national bank with having made a false entry in a report with intent to deceive an officer of the association, need not describe the report with technical accuracy, and an averment of the date when made, and that it was a report made to the Comptroller of the Currency showing the resources and liabilities of the bank on a certain date, is sufficient to authorize the presumption that it was a report made by the association under section 5211.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 971; Dec. Dig. § 257.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

170 F.—25

**3. BANKS AND BANKING (§ 256\*)—NATIONAL BANKS—OFFENSES BY OFFICERS—MAKING FALSE REPORT.**

Rev. St. § 5209 (U. S. Comp. St. 1901, p. 3497), which makes it a criminal offense for any officer or agent of a national bank to make any false entry in any report of the association with intent to deceive any officer of the association, etc., includes a report voluntarily made as well as one required by law, if the false entry was made with the requisite unlawful intent.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 960; Dec. Dig. § 256.\*]

**4. CRIMINAL LAW (§ 377\*)—EVIDENCE—REPUTATION OF ACCUSED.**

On the trial of a defendant charged with making a false entry in a report of a national bank of which he was cashier, where witnesses were allowed to testify as to his reputation for truthfulness and honesty, it was not error to exclude testimony as to his reputation for morality and sobriety as irrelevant.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 836, 840; Dec. Dig. § 377.\*]

**5. BANKS AND BANKING (§ 257\*)—NATIONAL BANKS—PROSECUTION OF OFFICER FOR MAKING FALSE REPORT—INSTRUCTIONS.**

Instructions given on the trial of a defendant charged with having, while cashier of a national bank, made false entries in a report of the bank, with intent to deceive the president thereof, considered, and, taken together, *held* not erroneous.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 257.\*]

Sanborn, Circuit Judge, dissenting.

In Error to the United States Court of Appeals in the Indian Territory.

For opinion below, see 7 Ind. T. 437, 104 S. W. 673.

Charles B. Rogers and James S. Davenport, for plaintiff in error.
William J. Gregg, U. S. Atty.

Before SANBORN and ADAMS, Circuit Judges, and RINER, District Judge.

RINER, District Judge. At the October term of the United States Court for the Northern District of Indian Territory, sitting at Vinita, the plaintiff in error, hereafter called the defendant, was indicted for making a false entry in a report to the Comptroller of the Currency, showing the resources and liabilities of the First National Bank of Miami, Ind. T.

The statute upon which this indictment is based is section 5209 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 3497), being a portion of the national banking act, and, so far as it applies to this case, the section is as follows:

"Sec. 5209. Every president, director, cashier, teller, clerk or agent of any association * * * who makes any false entry in any book, report, or statement of the association, with intent in either case, to injure or defraud the association * * * or to deceive any officer of the association, or any agent appointed to examine the affairs of any such association * * * shall be deemed guilty of a misdemeanor * * *."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The indictment contains but one count, and is in the following words:

"United States of America, Indian Territory, Northern District—ss.:

"In the United States Court for the Northern District of the Indian Territory, sitting at Vinita, October Term, 1904.

"United States vs. S. D. Harper.    Indictment for violation of Section 5209, R. S. U. S.

"The grand jurors of the United States of America, duly selected, impaneled, sworn and charged to inquire within and for the body of the Northern district of the Indian Territory, in the name and by the authority of the United States of America, upon their oaths do find, present, and charge that on the 14th day of February, A. D. 1903, and within the Northern district of the Indian Territory, one S. D. Harper, being then and there the duly elected, qualified, and acting cashier of the First National Bank of Miami, Indian Territory, a corporation duly organized and existing under and by virtue of the laws of the United States in force in the Indian Territory, unlawfully and feloniously, and with the unlawful and felonious intent in him, the said S. D. Harper, then and there to deceive one E. B. Frayser, the said E. B. Frayser being then and there the duly elected, qualified, and acting president of the said First National Bank, did make a certain false entry in a certain report showing the resources and liabilities of said First National Bank on the 6th day of February, A. D. 1903, to the Comptroller of the Currency by then and there stating in said report that the liability of him, the said S. D. Harper, as payer to the said First National Bank, was the sum of thirty-four hundred and seventy (3,470) dollars, whereas, in truth and in fact, the liability of him, the said S. D. Harper, as aforesaid, was in the sum of fifty-four hundred and ninety-five (5,495) dollars; and the grand jurors aforesaid, upon their oaths aforesaid, do find, present and charge that he, the said S. D. Harper, then and there well knew and believed the said liability of him, the said S. D. Harper, as payer to the said First National Bank, on said 6th day of February, A. D. 1903, as aforesaid, was then and there in the amount of fifty-four hundred and ninety-five dollars; contrary to the form of statute in such case made and provided, and against the peace and dignity of the United States of America."

To this indictment the defendant demurred; the demurrer was over-ruled, an exception taken, and on the same day the case proceeded to trial, resulting in a verdict finding the defendant guilty.  The case was then appealed to the Court of Appeals in the Indian Territory, where the judgment was affirmed, and the case is here for our consideration upon a writ of error to that court.

Fourteen errors are assigned, but counsel in their brief group assignments 1, 2, 3, 6, 7, 8, 9, 10, 11, 12, and 13 and argued them together.  They all relate to the one general subject—the sufficiency of the indictment, and the rulings of the court upon objections thereto.

It must be conceded that the indictment is rather loosely and care-lessly drawn, and we cannot forego the suggestion, at the outset, that in all cases of this character it is safer and better in the preparation of indictments to follow approved forms and precedents.    But the question here is not whether the indictment, as was said by the Court of Appeals for the Ninth Circuit, in Peters v. United States, 94 Fed. 127, 36 C. C. A. 105, "might possibly have been made more certain, but whether it contains every element of the offense intended to be charged, and sufficiently apprised the defendant of what he must be prepared to meet; and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction."    United

States v. Simmons, 96 U. S. 362, 24 L. Ed. 819; United States v. Carll, 105 U. S. 612, 26 L. Ed. 1135; United States v. Hess, 124 U. S. 483, 8 Sup. Ct. 571, 31 L. Ed. 516; Pettibone v. United States, 148 U. S. 197, 13 Sup. Ct. 542, 37 L. Ed. 419; United States v. Britton, 107 U. S. 655, 2 Sup. Ct. 512, 27 L. Ed. 520.

It is undoubtedly a well-established rule in criminal pleading that the indictment must be sufficient to fully apprise the defendant of the charge made against him, and that no statute could make valid an indictment that deprived him of such right. But it must, as was said by the Supreme Court in Evans v. United States, 153 U. S. 584, 14 Sup. Ct. 934, 38 L. Ed. 830, "be borne in mind that the object of criminal proceedings is to 'convict the guilty, as well as to shield the innocent, and no impracticable standards of particularity should be set up, whereby the government may be entrapped into making allegations which it would be impossible to prove."

The indictment sets out the fact that the defendant, on the 14th of February, 1903, was then and there the duly elected, qualified, and act-ing cashier of the First National Bank of Miami, Ind. T., a corporation duly organized and existing under and by virtue of the laws of the United States. It then proceeds to charge that he unlawfully and feloniously, and with the unlawful and felonious intent to deceive the duly elected, qualified, and acting president of the bank, "did make a certain false entry in a certain report showing the resources and liabilities of the said First National Bank on the 6th day of February, A. D. 1903, to the Comptroller of the Currency." It is objected that this statement is. not sufficient to show that the defendant was the cashier of the First National Bank of Miami, a national banking as-sociation which was carrying on a banking business, or that the re-port in which the false entry is charged to have .been made was a report made by the association. These objections, we think, are with-out merit.

The indictment charged that the defendant was the duly elected, qualified, and acting cashier, and that the president was the duly elect-ed, qualified,. and acting president. It seems to us that it is rather far-fetched to say that this does not sufficiently show that the bank was carrying on a banking business, and that the averment that the re-port was made to the Comptroller does not necessarily imply that it was made by the association. However that may be, the charge in the indictment is not the making or the failure to make a report re-quired by section 5211 (page 3498), but it is the making of a false entry in a report under section 5209. The failure to make the report or reports required by section 5211 subjects the association to a pen-alty under section 5213 (page 3499), whereas the penalty for the of-fense charged in this indictment is fixed by section 5209, which makes it a misdemeanor for a president, director, cashier, teller, clerk, or agent of an association to make a false entry in any report, with in-tent to injure or defraud the association or to deceive any officer of the association. Had the indictment been against the association for a failure to make the report required by section 5211, it would then have been necessary to aver that the report was one required to be made by the association, but as the report mentioned in the indictment

is referred to "only for the purpose of showing that it was made to the Comptroller, the person authorized by law to call for such a report, it need not be described with technical accuracy." Cochran & Sayre v. United States, 157 U. S. 286, 15 Sup. Ct. 628, 39 L. Ed. 701.

The date when the report was made, the date as to which the condition of the bank is given, and the fact that the report was made to the Comptroller of the Currency, are all set out in the indictment with sufficient accuracy, so that we think there is no possibility that any mistake or misapprehension could arise as to the offense charged, or that the defendant could in any way be misled or prejudiced in his defense. Some things may be presumed even in criminal pleading. Where a report is referred to in an indictment, giving its date and the person to whom made, it certainly cannot be necessary to require it to contain the minute conditions as to the time of sending, that it was sent pursuant to a call of the Comptroller, and the contents of the report specifically, as required by another section of the law. The fact that the report in this case was made to the Comptroller of the Currency by the cashier of the bank, stating the condition of the bank upon a certain day, authorizes, we think, the presumption that it was a report made by the association under section 5211.

But irrespective of these considerations, it has been decided by this court that an offense is not confined to reports made to the Comptroller of the Currency, pursuant to the requirements of section 5211. In Bacon v. United States, 97 Fed. 35, 38 C. C. A. 37, Judge Thayer, in the course of the opinion, said:

"It will be observed that section 5209, in defining the offense of making a false report, contains no such limitation as that sought to be imposed. The language of the law is general that 'every president, director, cashier, teller, clerk or agent of any association * * * who makes any false entry in any book, report or statement of the association, with intent,' etc., 'shall be deemed guilty of a misdemeanor, * * *' which language may as well include a false report voluntarily made by a bank official to the Comptroller of the Currency to influence his action, and accomplish some fraudulent purpose, as a false report made in pursuance of a call or request from that officer. We perceive no reason why a false report or statement made voluntarily to the Comptroller of the Currency in relation to the condition of a national bank for the purpose of inducing some action on the Comptroller's part, or of forestalling certain action which he contemplates taking, should not be deemed an offense, as well as the making of a false report pursuant to a call or request from that officer, provided the act is done with the intent specified in the statute. The law was designed, we think, to prevent bank officials and employés from making any false entry in the books of the bank, and from making any false representations concerning its financial condition and resources in any report or statement which they may see fit to make in behalf of the bank to the Comptroller of the Currency, or to persons appointed to examine its condition, for the purpose of influencing their action"—citing to examine its condition, for the purpose of influencing their action"—citing to examine United States v. Booker (D. C.) 80 Fed. 376, to the same effect.

And in United States v. Hughitt (D. C.) 45 Fed. 47, it was said:

"The statute makes no provision for the keeping of books or the making of statements eo nomine. And yet it was clearly the intention of the lawmakers to punish the making of false entries, not only in books, but in statements of the condition of the bank, if such entries were made with intent to deceive. Section 5211 provides for five reports annually, but if the association sees fit to volunteer other reports containing false entries made with the express purpose of deceiving the officers of the law as to the true

condition of the bank, can it be doubted that such reports would be within the provisions of section 5209? A construction that they would not be, defeats the obvious intent and purpose of the law. By sending a false report to the Comptroller or an examiner, at a critical period, suspicion might be allayed and an unfounded confidence created, under cover of which the bank could be plundered and the grossest frauds perpetrated with impunity. It cannot be doubted that a report, whether called for by the Comptroller or not, which is a report, in the usual form, of the condition of the association, made by its president in his official capacity and transmitted to the Comptroller, is within the section in question, provided it contains false entries made with intent to deceive. A bank officer who has made such a report cannot escape punishment by showing that the fraud was voluntarily committed, and at a time when he was under no obligation to furnish any report or statement whatever. The statute does not confine the crime of making false entries to 'a report made to the Comptroller under the provisions of section 5211 and pursuant to his request'; it covers 'any report or statement.'"

In this connection, reference may be made to section 1025 of the Revised Statutes (U. S. Comp. St. 1901, p. 720), which provides that no indictment shall be deemed insufficient by reason of any defect or imperfection in the matter of form only which shall not tend to prejudice the defendant. This section of the statutes, while it is not to be construed as permitting the omission of any matter of substance, we think, is properly applicable to an indictment where the only defect complained of is that some element of the offense is stated loosely and without technical accuracy.

As already indicated, the indictment would be more satisfactory if it gave more full information in some of the respects suggested by counsel for the defendant, but still we think, when tested by the rules already suggested, that as it stands it must be held to be sufficient.

The fourth error assigned is that the trial court erred in not permitting W. P. Gatewood, a witness for the defendant, to testify to the moral character of the defendant. The witness was permitted to testify that he had known defendant for about six years; that he knew his reputation for honesty during the time he resided at Vinita, and that it was good, but that he did not know his reputation for honesty during the time he had resided at Miami. The question which the court declined to permit him to answer was: "Are you acquainted with his general reputation in the neighborhood, during the time he resided here, for morality and sobriety?" Objection was made to this question, and the objection sustained. Gatewood and three other witnesses were allowed to testify to the general reputation of the defendant, in the neighborhood in which he lived, for truthfulness, veracity, and honesty, and, within the rule stated by Greenleaf, vol. 3, § 25, "Evidence, when admissible, ought to be restricted to the trait of character which is in issue; or, as it is elsewhere expressed, ought to bear some analogy and reference to the nature of the charge; it being obviously irrelevant and absurd, on a charge of stealing, to inquire into the prisoner's loyalty; or, on a trial for treason, to inquire into his character for honesty in his private dealings"—we think the court committed no error in ruling out the answer to this question.

The fifth and fourteenth assignments of error relate to the following instruction given by the court to the jury:

"The court instructs you that every sane man is presumed to intend the consequences of each act; that this defendant is presumed to have intended the consequences of his signing this statement and swearing to it; that he is presumed to have intended to deceive the officers of the bank, including Mr. Frayser, its president, as well as the Comptroller of the Currency; that, by reason of his making this report and of swearing to this report, he is presumed, if that report were untrue. to publish to Frayser and to the world, and to the Comptroller of the Currency, an untrue report; and it is his duty to show to this jury why it was, and under what circumstances he was justified in issuing such a report. If he has come into this court and shown you that there is a reason for his producing that report other than to deceive; if he has given a reasonable explanation how he came to make that report false, if it is false, then it is your duty, if you believe his explanation, and it is a reasonable explanation, or if a reasonable doubt arises by reason of his explanation, to acquit him; but if this evidence convinces your minds to a moral certainty that on that day, with full knowledge of the fact that he owed that bank a larger sum of money than that contained in his statement, he made up that statement and swore to it for the purpose of deceiving the president and the Comptroller and the other officers of the bank, it is your duty to convict that man, because he is presumed to have intended just exactly what the consequences of his acts were if they were a deception upon these people."

It is insisted by counsel that this instruction was misleading, in that the court said, "If he made up that statement and swore to it for the purpose of deceiving the president and the Comptroller and the other officers of the bank, it is your duty to convict that man," whereas the charge in the indictment was that the false report was made by the defendant with intent to deceive Frayser, the president. Standing alone, this instruction might be susceptible of the criticism made by counsel, but when we come to consider the entire charge of the court, which we must do in determining this question, we do not think the jury could have been misled by the portion of the instructions excepted to. The court had already said to the jury in another portion of its charge:

"Before the government can expect conviction in this case it must show to the jury, by evidence which shall satisfy you beyond a reasonable doubt, that within the Northern district of the Indian Territory, and on or about the 14th day of February, S. D. Harper, the defendant, was the cashier of the First National Bank of Miami; that on the 6th day of February, 1903, he made a report of the condition of the bank to the Comptroller of the Currency, which report contained certain false entries with reference to his personal liabilities to the bank with intent to deceive E. B. Frayser, the president of the bank, by stating in said report that his liabilities to the bank were only $3,470, whereas at the time his liabilities to the bank were $5,495. These allegations must be proven to your satisfaction, by evidence beyond a reasonable doubt."

The court further charged that:

"The defendant is to be presumed innocent of this offense until the government makes out its case as to the crime charged and each ingredient constituting the crime by evidence which satisfies you, beyond a reasonable doubt, of his guilt. This presumption extends with him in the case, as to this crime and each element of it, until it is overcome by evidence which establishes his guilt beyond a reasonable doubt."

These instructions clearly stated to the jury the issue upon which they were to pass and the degree of proof necessary to warrant a conviction. And, after a careful examination of the entire charge of the court to the jury, we are of opinion that it fairly stated the law ap-

plicable to the facts as disclosed by the evidence, and that the jury could not have been misled by the short excerpt above quoted, taken from the general charge, to which the exception is directed.

A thorough examination of the entire record discloses no errors which would authorize a reversal of the judgment, and the judgment of affirmance entered by the United States Court of Appeals in the Indian Territory, and the judgment of the United States Court for the Northern district of the Indian Territory, are affirmed.

ADAMS, Circuit Judge (concurring). I agree with what is said by Judge RINER in the foregoing opinion, but desire to add the following:

The ground most earnestly urged for a reversal of this judgment is that the indictment is fatally defective because it does not charge that the false entry was made in a report "of the association," as contemplated by section 5209 of the Revised Statutes.

The rules governing criminal pleadings have become less technical and more practical, but no less protective to the accused, since the Supreme Court in a series of cases beginning in the year 1893, notably Dealy v. United States, 152 U. S. 539, 14 Sup. Ct. 680, 38 L. Ed. 545; Evans v. United States, 153 U. S. 584, 14 Sup. Ct. 934, 38 L. Ed. 830; Dunbar v. United States, 156 U. S. 185, 15 Sup. Ct. 325, 39 L. Ed. 390; Cochran & Sayre v. United States, 157 U. S. 286, 15 Sup. Ct. 628, 39 L. Ed. 704; and Rosen v. United States, 161 U. S. 29, 16 Sup. Ct. 434, 480, 40 L. Ed. 606—has under various circumstances declared that allegations in an indictment are sufficient if their meaning is "clear to the common understanding"; that "no impracticable standards of particularity should be set up"; that "few indictments under the national banking law are so skillfully drawn as to be beyond the hypercriticism of astute counsel"; and that "the entire indictment is to be considered in determining whether the offense is fairly stated." The liberal tendency of the doctrine so announced has been followed by this court in Clement v. United States, 79 C. C. A. 243, 149 Fed. 305, Rinker v. United States, 81 C. C. A. 379, 151 Fed. 755, Stearns v. United States, 82 C. C. A. 48, 152 Fed. 900, and Morris v. United States, 88 C. C. A. 532, 161 Fed. 672.

In the Dunbar Case Mr. Justice Brewer, speaking for the court, affords a practical application of the liberal doctrine taught in the foregoing cases. He allowed an indictment to be helped out by reference to certain specific tariff schedules. The indictment charged the "smuggling of prepared opium." It appears that the offense denounced by the statute consisted of smuggling "opium prepared for smoking." He held that by reference to the tariff schedules the words "prepared opium" would be seen to be essentially the equivalent of the words "opium prepared for smoking."

Applying the principles just alluded to, I think we are at liberty to consider the present indictment in the light of the statute which defines the duty of banking associations. Section 5211 enacts that "every" (banking) "association shall make to the comptroller of the currency not less than five reports during each year * * *. Each report shall exhibit in detail and under separate heads the resources

and liabilities of the association at the close of business on any past day. * * *" What can be plainer to the common understanding than that the reports showing resources and liabilities of the First National Bank on the 6th day of February, A. D. 1903, to the Comptroller of the Currency referred to in the indictment was one which was being furnished to the Comptroller by the association whose duty it was to do so? The report, according to the language of the indictment, undertook to make a showing of the resources and liabilities of the bank exactly as required by section 5211. I think, reading the indictment in the light of the law under which it was drawn makes it perfectly clear that the defendant was charged with making a false entry in a report of the association to the Comptroller. The true test as laid down by all the authorities concerning the particularity of averment required in a criminal indictment is that it should contain such a description of the offense charged as will enable the defendant to make his defense and plead such judgment as may be rendered in the case in bar of any further prosecution for the same offense. I think the defendant would be considerably surprised if we should gravely hold that, by reason of the omission of the words "of the association" from the indictment, he was not sufficiently informed of the nature and cause of the accusation against him within the meaning of the rule just stated.

I am in favor of affirming the judgment.

SANBORN, Circuit Judge (dissenting). Section 5209 of the Revised Statutes under which the plaintiff in error was convicted provides that:

"Every president, director, cashier, teller, clerk or agent of any association, * * * who embezzles, abstracts or wilfully misapplies any of the moneys, funds or credits of the association; * * * or who makes any false entry in any book, report or statement of the association, with intent, in either case, * * * to deceive any officer of the association, * * * shall be deemed guilty of a misdemeanor and shall be imprisoned not less than five years nor more than ten."

Section 5211 provides that every association shall make to the Comptroller of the Currency not less than five reports in each year verified by the oath or affirmation of the president or cashier of such association. Section 5209 imposes the same severe penalty for the making of false entries in reports, books, or statements of a national banking association as for the willful embezzlement of its funds, a penalty much more appropriate for the latter than for the former offense. And, where the offense is the making of false entries, the statute and the pleadings under it should be strictly construed. No one should be punished for it unless he has been clearly charged with the crime and was placed upon trial for it.

One of the essential ingredients of the offense of which the plaintiff in error was convicted was that the false entry was made in a report, book, or statement of the national banking association described in the indictment. A false entry in a report, book, or statement of any other person or corporation is not an offense under this act of Congress. United States v. Eqe (D. C.) 49 Fed. 852, 853; United

States v. Potter (C. C.) 56 Fed. 83, 102. It is true that Judge Amidon, in United States v. Booker (D. C.) 80 Fed. 376, 378, 379, made some remarks that are not in accord with this view. But they are not persuasive, and they are obiter dicta, for the indictment in that case charged both that the bank made the report in which the false entry was alleged to have been inserted and also that this report was one of the five reports required by the law. In my opinion the proposition cannot be sustained that the officer, teller, or cashier, of a national bank is liable to imprisonment for five or ten years under section 5209 for making a false entry in a report, book, or statement of any other person or corporation than a national banking association.

If the indictment had contained an averment, as in Cochran & Sayre v. United States, 157 U. S. 288, 289, 15 Sup. Ct. 628, 629, 39 L. Ed. 704, that the false entry was inserted in a report "made to the Comptroller of the Currency in accordance with the provisions of section 5211 of the Revised Statutes of the United States," the allegation would undoubtedly have been sufficient to show that the entry was made in a report of the banking association, because reports of none but the banking association are required by that section.

The question presented in this case was neither in issue nor decided in Bacon v. United States, 97 Fed. 35, 38, 38 C. C. A. 37, for the indictment in that case contained an averment that the "association, on the twenty-eighth day of December, one thousand eight hundred and ninety-three, then and there made, to the then Comptroller of the Currency of the said United States, a report of the condition of the said association at the close of business on the nineteenth day of December, in the year of our Lord one thousand eight hundred and ninety-three, according to a certain form theretofore prescribed by the Comptroller of the Currency of the United States for the time being; the same being a report which it was there and then, to wit, on said twenty-eighth day of December in the same year, by law the duty of the said association to make and transmit to the said Comptroller, to wit, one of the five reports before that time and then required by law to be made in each year by every such association, and being then and there verified by the oath of the said president of the same association and attested by the signatures of three of the then directors thereof"; and that Bacon made the false entries in that report. Nor was the question decided in United States v. Booker (D. C.) 80 Fed. 376, 377, where the averments in the indictment were "that the Grand Forks National Bank on that day made to the Comptroller of the Currency a report of the condition of the association at the close of business on the eighteenth day of July one thousand eight hundred and ninety-four, according to a form theretofore prescribed by the Comptroller. That the report was one which it was the duty of the association by law to make to the Comptroller, being one of the five reports required by law to be made in each year by every such association. That the report was verified by the oath of the defendant, Booker, president of said association, and attested by the signatures of three of the directors," and that Booker made the false entries in that report. Nor was it presented or decided in United States v. Hughitt (D. C.) 45 Fed. 47, where the averment in the indictment was that the defendant "did

knowingly, wrongfully, and unlawfully make and cause to be made false entries in a report or statement of the First National Bank of Auburn, being a report of the condition of the First National Bank of Auburn at the close of business on the seventh day of December one thousand eight hundred and eighty-seven, made to the Comptroller of the Currency as required by law to be made to the Comptroller of the Currency." Indeed, I have been unable to discover any decision of any court to the effect that an indictment under section 5209 which does not contain an averment either that the false entry was made in some report, book, or statement of the banking association, or that it was made in a report to the Comptroller in accordance with the provisions of section 5211, which must necessarily have been a report of the association, was sufficient. This indictment contains neither. Evidence that the plaintiff in error made the false entry in a report of his own, or in a report of any other person or corporation than the First National Bank of Miami, would have established the allegations of the indictment as effectually as testimony that he inserted the false entry in a report of that bank.

In Ledbetter v. United States, 170 U. S. 606, at page 610, 18 Sup. Ct. 774, at page 775, 42 L. Ed. 1162, the Supreme Court said:

"We have no disposition to qualify what has already been frequently decided by this court, that where the crime is statutory it must be charged with precision and certainty, and every ingredient of which it is composed must be clearly and accurately set forth, and that even in the cases of misdemeanors the indictment must be free from all ambiguity, and leave no doubt in the minds of the accused and the court of the exact offense intended to be charged. United States v. Cook, 17 Wall. 168, 174, 21 L. Ed. 538; United States v. Cruikshank, 92 U. S. 542, 562, 23 L. Ed. 588; United States v. Carll. 105 U. S. 611, 26 L. Ed. 1135; United States v. Simmons, 96 U. S. 360. 24 L. Ed. 819; United States v. Hess, 124 U. S. 483, 8 Sup. Ct. 571, 31 L. Ed. 516; Pettibone v. United States, 148 U. S. 197, 13 Sup. Ct, 542, 37 L. Ed. 419; Evans v. United States, 153 U. S. 584, 14 Sup. Ct. 934, 38 L. Ed. 830."

A false entry in a report of the association was an indispensable element of the offense in this case. A false entry in the report of another was not an offense under the act of Congress. There was no averment that the entry was made in a report of the association, or that it was made in a report required under section 5211. Therefore it did not set forth "all the elements necessary to constitute the offense intended to be punished" (Evans v. United States, 153 U. S. 584, 587, 14 Sup. Ct. 934, 936, 38 L. Ed. 830), nor was the crime "charged with precision and certainty and every ingredient of which it is composed * * * clearly and accurately set forth" (Ledbetter v. United States, 170 U. S. 606, 610, 18 Sup. Ct. 774, 42 L. Ed. 1162), and in my opinion the indictment was insufficient and the judgment below should be reversed (United States v. Britton, 107 U. S. 655, 662, 2 Sup. Ct. 512, 27 L. Ed. 520).